# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                              Case No. 10-CV-590

DEE LUEBKE, WHPC-DWR, L.L.C., and
CARDINAL CAPITAL MANAGEMENT INC.,

        Defendants.

_____

# ORDER

On July 14, 2010, the plaintiff, the United States of America, filed a complaint against Dee Luebke ("Luebke"), WHPC-DWR LLC ("WHPC-DWR"), and Cardinal Capital Management Inc. ("Cardinal Capital"), in an attempt to enforce certain provisions of Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act" or "FHA" or "the Act"). (Docket #1). On September 17, 2010, defendant Luebke filed, pursuant to Fed. R. Civ. P. 12(b)(6), a motion to dismiss the claims as they relate to her. (Docket #7). With the benefit of the parties' briefs, the court proceeds to address Ms. Luebke's motion, beginning by looking at the factual allegations as provided in the July 14, 2010 complaint.

The complaint states that, "during part or all of the time period between September 2008 and November 2009," Ms. Luebke was an employee of Cardinal Capital, managing, operating, and renting dwelling units at the Village Square Apartments in Walworth, Wisconsin. (Compl. ¶¶ 3-4). The complaint further alleges that in September of 2008, Richard Singsime ("Singsime"), a 52-year old man who

had "several conditions in his legs and in his back that substantially limited his ability to walk without difficulty and without great pain," *id.* ¶ 7, met with Ms. Luebke "about renting a unit" at the Village Square Apartments. *Id.* ¶ 9. Mr. Singsime opted to rent the dwelling unit, as the unit was located "near a dumpster, . . . had an emergency exit door across from the unit that Mr. Singsime could use to let out his dog, . . . [and] the property contained a space near the building entrance with a sign reserving it for persons with disability parking permits." *Id.* ¶¶ 9-10. The complaint notes that upon moving into his new apartment, Mr. Singsime began parking in a spot closest to the building's entrance. *Id.* ¶ 12. The parking space that Mr. Singsime used was marked with a sign that read "RESERVED PARKING," noting that "persons parking in the spot were required to have a disabled parking permit." *Id.* ¶ 11. The asphalt inside the parking space area was also painted with a "handicap" symbol. *Id.*

The complaint continues, stating that "a few weeks" following Mr. Singsime's move to the Village Square Apartments, Ms. Luebke contacted the new resident and told him that "he could not park" in his current parking space "because it was reserved for persons picking up and dropping off residents." *Id.* ¶ 12. Mr. Singsime allegedly informed Ms. Luebke of his need to use the parking spot because of his disability, but the defendant "refused to grant Mr. Singsime an assigned parking space near the building entrance." *Id.* ¶ 13. As a consequence, Mr. Singsime began to park in a spot that was "substantially farther away from the building entrance," causing him "extreme pain in his legs and feet." *Id.* ¶ 14. Ultimately, Mr. Singsime fell on a patch of ice "when crossing the parking lot to reach his vehicle," sustaining

injuries that the complaint alleges were a product of his inability to use a parking space that was in closer proximity to his apartment. *Id.* In November of 2009, Mr. Singsime, concluding he was "unable to continue living" at the Village Square Apartments during the winter months because of the potential for another fall, moved out of the property. *Id.* ¶ 15.

After Mr. Singsime's request for a parking spot near the entrance of the building he was living in was denied, Singsime filed a housing discrimination complaint with the Department of Housing and Urban Development ("HUD"), alleging violations of the Fair Housing Act, on the basis of a failure to make a reasonable accommodation. *Id.* ¶ 17. Mr. Singsime's complaint listed Ms. Luebke, Bob McCormick of Cardinal Capital, and Erich Schewenker of Cardinal Capital as respondents. HUD investigated the complaint in accordance with 42 U.S.C. § 3610 (a) and (b). Pursuant to 42 U.S.C. § 3610(g)(2), on June 7, 2010, HUD, finding that reasonable cause existed to believe that a discriminatory housing practice had occurred, issued a charge on behalf of Mr. Singsime against Cardinal Capital and WHPC-DWR, the company that owned the property in question. (Docket #9). The charge of discrimination states in a footnote that "the Department has not authorized a Charge of Discrimination against Respondent Dee Luebke in her individual capacity." However, the charge noted that HUD found "reasonable cause [to charge] all respondents" listed in Mr. Singsime's original complaint. The Charge of Discrimination failed to explain why the Department of HUD chose to not include Ms. Luebke in the charge. A week after HUD issued its Charge of Discrimination, Mr.

Singsime, acting pursuant to 42 U.S.C. § 3612(a), elected to "have the claims asserted in [the] charge in a civil action." *Id.* ¶ 19. Subsequently, "the Secretary of HUD authorized the Attorney General to commence" this civil action.[1] *Id.* ¶ 21. Thirty days later, the plaintiff commenced a civil action on behalf of Mr. Singsime in this court, naming WHPC-DWR, Cardinal Capital, and Ms. Luebke as defendants. (Docket #1).

Ms. Luebke has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Docket #7). Before resolving the substance of the defendant's motion to dismiss, the court addresses the procedural rules animating a Fed. R. Civ. P. 12(b)(6) motion. Fed. R. Civ. P. 12(b)(6) permits a defendant to assert a defense that the underlying complaint fails to state a claim upon which relief can be granted. To survive a 12(b)(6) motion to dismiss, the plaintiff's complaint must only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[1] The court notes that neither party submitted any documentation to the court regarding the authorization or the scope of that authorization by the Secretary of HUD to allow the Attorney General to commence this civil action.

liable for the misconduct alleged."² *Iqbal,* 129 S. Ct. at 1949. Generally, a court in deciding a Rule 12(b)(6) motion to dismiss must limit its review to the allegations in the complaint. However, an exception to this rule exists for documents that are referred to in the complaint and that are central to the plaintiff's claim, as the court can consider those documents using the standards for deciding a motion to dismiss. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). As a result, the court will look to the complaint and to the Charge of Discrimination that is referenced in the complaint to resolve the motion.

Ms. Luebke's motion is premised on the argument the United States' "pursuit of a claim against Ms. Luebke . . . is prohibited by the Fair Housing Act which states that only claims asserted in the [sic] HUD's charge can be brought in federal court." (Def.'s Br. at 1-2). The plaintiff, however, contends that the Fair Housing Act does not prohibit suits against persons who were not named in the charge issued by HUD. (Pl.'s Br. at 8) ("The principle of law Luebke advocates, however, has no support in the text of the statute, the regulations, or the applicable case law.") For purposes of context, the court broadly notes that after HUD issues a "Charge of

---

² The court is also guided by the Seventh Circuit's synthesis of the Supreme Court's case law on Fed. R. Civ. P. 12(b)(6):

> "So, what do we take away from *Twombly, Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

-5-

Discrimination" for a violation of the FHA, a complainant can choose between having the claim heard by an administrative law judge or in federal court. 42 U.S.C. § 3612(a) and (b). The FHA provides, "When a charge is filed under section 3610 of this title, a complainant, a respondent, or an aggrieved person on whose behalf the complaint was filed, may elect to have the claims asserted in that charge decided in a civil action under subsection (o)" brought by the United States in a United States District Court, instead of in an administrative hearing. 42 U.S.C. § 3612(a). If a party opts to have the "claims asserted in [the underlying] charge decided in a civil action," HUD must "authorize" and the Attorney General must "commence and maintain" "a civil action on behalf of the aggrieved person in a United States district court." 42 U.S.C. § 3612(o).

Initially, the court agrees with the defendant that the plain language of the FHA generally requires that the civil action that the United States is maintaining on behalf of Mr. Singsime stem from the underlying charge filed by HUD. The authority for the Attorney General to bring a civil action is a product of the election of the original complainant to seek relief in federal court. 42 U.S.C. § 3612(o). The election by a complaining party does not entitle that party to have *any* possible claim under the FHA against *any* possible defendant asserted in federal court; rather the ability of the complaining party to "elect" to have an issue resolved via a civil action is limited to those claims asserted in the charge issued by HUD. 42 U.S.C. § 3612(a). Here, as HUD limited its Charge of Discrimination to claims against WHPC-DWR and Cardinal Capital, the ability for the United States to maintain an action on behalf of

Mr. Singsime is, as a general rule, similarly limited. However, the court is aware that there is a paucity of case law interpreting the Fair Housing Act with regard to whether the United States can, in an "election" case, litigate against a defendant who HUD did not issue a Charge of Discrimination against. However, the legislative history of the FHA suggests that the Justice Department's ability to pursue litigation on behalf of a complainant is a product of HUD's recommendation. H.R. Rep. No. 711, 100th Cong., 2d Sess. 24 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2178 ("House Report") ("The bill . . . at the suggestion of the Administration, allows the Justice Department to seek substantial civil monetary penalties against violators."). Moreover, the court is guided by case law interpreting Title VII of the Civil Rights Act of 1968, as the Seventh Circuit has recognized that the Fair Housing Act is the "functional equivalent of Title VII" and that the "two statutes are given like construction and application." *Kyles v. J.K. Guardian Sec. Servs.*, 222 F.3d 289, 295 (7th Cir. 2000). As both parties point out in their briefs to the court, the general rule under Title VII is that a "party not named in the EEOC charge cannot be sued under Title VII." *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991). Given the plain language of the FHA, the legislative history of the Act, and analogous case law interpreting Title VII, the court holds that a party who was not named in HUD's charge generally cannot be subject to litigation under the FHA by the Justice Department in an "Election Case."

However, the court's general conclusion does not end the matter. In the alternative, the United States, citing to case law interpreting Title VII, argues that an

exception exists to the general rule discussed above such that "persons who were not even formally identified as respondents in the administrative proceedings may be named as defendants in the subsequent suit, provided that the defendant had 'adequate notice' of the complaint and an 'opportunity to participate in the conciliation process.'" (Pl.'s Resp. Br. at 10) (quoting *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 126 (7th Cir. 1989)). Accordingly, the court must determine whether a similar exception exists under the FHA. Again, the court does not have the benefit of any breadth of case law exploring the issue of whether the any exception exists to the general rule that the Charge of Discrimination limits the scope of civil litigation under the FHA. However, the only two cases that have discussed the issue raised by the United States, *United States v. Barberis*, 887 F. Supp. 110, 113 (D. Md. 1995), and *United States v. Woodlake Realty Company, Inc.*, No. 94-568, slip. op., at 4-9 (N.D. Ga. Apr. 18, 1995), reached the same conclusion that an exception does exist under the FHA. Upon examining those cases, the court ultimately concurs with the conclusions of those courts.[3]

The reason for the court's conclusion stems from the policy reasons as to why HUD issues a charge before a party can elect to have the claims in that charge resolved via civil litigation. The court notes analogous Title VII case law that

---

[3]The defendant attempts to distinguish *Barberis* and *Woodlake Realty* on their facts. However, the cases are indistinguishable from the present case as both courts allowed the case to proceed against a defendant that was not named in the administrative charge because: (1) the respective unnamed parties had adequate notice of the charges against them; (2) the unnamed parties had participated in the underlying administrative process; and (3) there was reasonable cause to believe that the unnamed defendants were liable under the FHA.

discusses the rationale for the "adequate notice" exception. The Seventh Circuit in *Schnellbacher* stated:

> The purpose of the requirement of filing a charge before the EEOC is twofold. First, it serves to notify the charged party of the alleged violation. Second, it gives the EEOC an opportunity for conciliation, which effectuates Title VII's primary goal of securing voluntary compliance with its mandates.

887 F.2d at 126. Beyond the two reasons provided by the *Schnellbacher* court for why a party should be the subject of a charge before being the subject of civil litigation, the court finds one additional reason stemming from the logic of the FHA's complaint process. The nature of the "charge" in Title VII and FHA litigation differs in that the initial charge of discrimination is issued by the complainant in Title VII litigation, whereas HUD issues the charge of discrimination under the FHA. The text of the FHA indicates that the purpose of having the Department of HUD issue a charge is to ensure that "reasonable cause" exists for the underlying complaint, allowing the agency to screen frivolous complaints and vigorously enforce those complaints that truly have merit. 42 U.S.C. § 3610(g); *see generally United States v. Curlee*, 792 F. Supp. 699, 700 (C.D. Cal. 1992) (finding that the purpose of the "procedural framework enacted by Congress in 1988 [was] to augment HUD's enforcement powers and to provide effective, less costly procedures to vindicate complainants' civil rights.") Accordingly, the purpose of the charge of the FHA is threefold, the charge: (1) notifies a charged party of the alleged violation; (2) provides the parties an opportunity to voluntarily comply with the FHA's mandates before having an administrative or court-based resolution to the matter; and (3)

provides a means for HUD to determine whether reasonable cause exists for the underlying complaint and to take action accordingly. Just as in the context of Title VII litigation, the court, agreeing with the conclusion of two other courts, finds little reason for insisting that a party to the litigation be named in the underlying administrative charge if the underlying purposes for having such a charge have been met. *Cf. Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981) (crafting the "adequate notice" exception in Title VII litigation). The alternative would elevate form over substance and ignore the Supreme Court's pronouncement that the FHA must be given a "generous construction" to carry out a "policy that Congress considered to be of the highest priority." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 211-12, 34 L. Ed. 2d 415, 93 S. Ct. 364 (1972). Moreover, the court notes that limiting the Justice Department's ability to enforce the provisions of the FHA would be diametrically opposed to the underlying rationale of the 1988 amendments to the FHA that allowed for the Attorney General to commence and maintain a civil action on behalf of an aggrieved person in federal court. *See* House Report at 16, *reprinted in* 1988 U.S.C.C.A.N. at 2177 ("Existing law has been ineffective because it lacks an effective enforcement mechanism . . . [t]he Justice Department can sue, but can do so only in cases of a 'pattern or practice' of discrimination.").

Applying these principles to the case at hand, the court first notes that Ms. Luebke was a respondent in the underlying HUD proceedings and received notice of the complaint and had an opportunity to conciliate in accordance with the

regulations. *See* 24 C.F.R. § 103.230. Moreover, HUD did indeed find that "reasonable cause" existed to issue a Charge of Discrimination against Ms. Luebke; HUD, in an act of discretion, opted to not formally issue a charge against Ms. Luebke. Indeed, the only apparent reason HUD did not formally charge Ms. Luebke with a violation of the FHA was pure benevolence, as Ms. Luebke can be individually liable for the acts she engaged in while employed for Cardinal Capital. *See, e.g., Moore v. Townsend*, 525 F.2d 482, 486 (7th Cir. 1975) (Clark, J.) (affirming that a salesperson who participated in discrimination in violation of the FHA was liable under the Act); *see generally Meyer v. Holley*, 537 U.S. 280, 285, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003) (citing 42 U.S.C. § 3605(a), 42 U.S.C. § 3602(d)). In short, the underlying purposes of having a party be named in the underlying administrative charge have been met in this case. Moreover, there is no authority that HUD's prosecutorial discretion can or should trump that of the Justice Department,[4] and, without some principled reason for why, given the procedural history of this case, Ms. Luebke needed to be named in the Charge of Discrimination in order to bring a civil action against her, the court will deny the motion to dismiss.

Ms. Luebke argues that the "adequate notice" exception is inapplicable to the FHA litigation, because the exception was solely created to apply to *pro se* complainants, as under Title VII, unlike the FHA, complainants issue the initial

---

[4] The United States persuasively argues in its brief to the court that, given that HUD had the discretion to amend its charge by right under its administrative rules, and was only prevented from doing so because of the immediate election of Mr. Singsime to proceed via a civil action, it would be "anomalous to hold that the United States lacks the same power merely because the case is now in federal court." (Pl.'s Resp. Br. at 13) (citing to 24 C.F.R. § 180.425).

administrative charge. The court, however, disagrees with the defendant's assessment of the scope of and rationale for the "adequate notice" exception. The *Eggleston* court, in crafting the "adequate notice" exception, created the rule after looking at the purposes behind having an administrative charge under Title VII and the necessity of insisting on such a charge in that particular case. 657 F.2d at 905 ("With the two-fold purposes of EEOC charge filing in mind, courts have recognized several exceptions to the rule that parties not named in the EEOC charge are not subject to suit in a private civil action."). While the *pro se* status of the complainant in *Eggleston* provided an explanation for why the plaintiff did not name all of the relevant defendants in the underlying administrative charge, the fact that the complainant was *pro se* when he filed the charge with the EEOC was neither necessary or sufficient to allow the court to disregard the procedural infirmity. For the *Eggleston* court, the dispositive issues were whether the unnamed party: (1) had been provided with adequate notice of the charge; and (2) had been given the opportunity to participate in conciliation proceedings. *Id.* at 907 ("Since the JAC was properly noticed and provided with the requisite opportunity for conciliation, its dismissal as a Title VII defendant by the district court was error"); *see also* Schnellbaecher, 887 F.2d at 127 ("Although HSSI had notice of the charges against Baskin, it did not thereby have any notice of any charges against it, nor did it have any opportunity to conciliate on its own behalf."). In *Eggleston*, given that the underlying purposes of issuing a "charge" in Title VII litigation was met in that case, the court found it appropriate to allow the litigation to go forward against the

unnamed litigation "to prevent frustration of the goals of Title VII by not requiring procedural exactness." 657 F.2d at 905. Here, similarly, the court concludes that as long as the purposes behind why a charge is issued by HUD before litigation can proceed against a party are achieved, no charge needed to be issued against Ms. Luebke.[5]

At the end of the day, the defendant is attempting to have this court dismiss the case against her because of a passing comment in a footnote to the Charge of Discrimination. The comments in the footnote are unsupported. Without any authority to the contrary, the court concludes that as long as the underlying purposes of the rule that HUD's charge limit the scope of litigation under the FHA are satisfied, there is no reason the DOJ cannot exercise its prosecutorial discretion to proceed against Ms. Luebke. Going forward, the court will issue an initial scheduling order to facilitate the further disposition of this case.

Accordingly,

---

[5] The defendant cites to *Sharkey v. Lasmo*, 906 F. Supp. 949, 954 (S.D.N.Y. 1995), for the proposition that the "adequate notice" exception "only applies where plaintiff is not represented by counsel." The *Sharkey* court provides no rationale for why such an exception is limited to *pro se* litigation, and the court concludes the rationale in *Eggleston* for why the exception exists is far more sound. The defendant also cites to *Latuga v. Hooters, Inc.*, No. 93-CV-7709, 1994 U.S. Dist. LEXIS 4008, at *6-7 (N.D. Ill. Mar. 31, 1994), but that case concedes that a plaintiff's *pro se* status is not dispositive in resolving whether the "adequate notice" exception applies. *Id.* at 7 ("It is *easier* to excuse the failure of a pro se plaintiff to accurately name all chargeable entities than to excuse counsel") (emphasis added). In fact, in *Latuga*, the central issue that propelled the court's decision was the fact that the plaintiff's EEOC charge "failed to provide adequate notice to [the unnamed defendant] of charges against it." *Id.* at 8.

**IT IS ORDERED** that defendant Luebke's motion to dismiss (Docket #7) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 24th day of November, 2010.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge