# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA (Dismissed),<br><br>                Plaintiff,<br><br>RICHARD SINGSIME,<br><br>                Intervenor-Plaintiff,<br>v.<br><br>WHPC-DWR, LLC, CARDINAL CAPITAL MANAGEMENT, INC., and DEE LUEBKE<br><br>                Defendant. | Case No. 10-CV-0590-JPS<br><br><br><br>ORDER |

      Richard Singsime, the plaintiff, is a fifty-two year old man who suffers from a disability that makes it very difficult for him to walk. In October of 2008, Mr. Singsime moved into the Village Square apartments, which are owned and operated by the defendants, WHPC-DWR, LLC ("WHPC") and Cardinal Capital Management, Inc. ("Cardinal"). WHPC and Cardinal operate Village Square under Section 8 of the United States Department of Housing and Urban Development's ("HUD") rent-subsidy program, essentially requiring that Village Square rent apartments exclusively to elderly and disabled individuals.

      However, Mr. Singsime contends that, upon moving into Village Square, the defendants did not meet his requests for a parking spot close to the building that would accommodate his disability. He complained to HUD, and the United States filed this suit against the defendants on Mr. Singsime's behalf, alleging a violation of Title VIII of the Civil Rights Act of 1968, as

amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq.* (Docket #1). Mr. Singsime intervened in the matter. (Docket #23). Then, the United States settled its claims with the defendants and dismissed its claims; this left only Mr. Singsime as an intervenor-plaintiff. (Docket #35).

On October 7, 2011, the defendants moved for summary judgment on the remaining claims being pursued by Mr. Singsime. (Docket #38). Having received the parties' briefs, the Court now renders its decision on that matter, granting the defendants' motion.

1.   Factual Background

Mr. Singsime moved into Village Square apartments in October of 2008. (PPFF ¶ 1). Village Square is an 18-unit building, owned and operated by the defendants, which offers housing to elderly and disabled individuals under HUD's Section 8 program. (DPFF ¶¶ 3–5, 7–9). Under the Section 8 program, Village Square's tenants receive rent subsidies, but must be either disabled or over the age of 62 in order to qualify to live at Village Square. (DPFF ¶ 7, 9). Mr. Singsime suffers from numerous back and leg problems, qualifying him for Social Security Disability Insurance, a handicap parking placard, and also to live at Village Square. (*See, e.g.*, PPFF ¶¶ 7, 8, Def. Resp. PPFF ¶ 7).

Shortly after moving into Village Square, Mr. Singsime became unhappy with the parking situation. Before reaching Mr. Singsime's dissatisfaction with the parking situation, though, the Court should first describe the parking lot. Village Square's lot contains twelve parking spaces, none of which are numbered or assigned to tenants. (DPFF ¶¶ 15, 19). Only one of those spaces is handicap-designated: Spot 12. (PPFF ¶ 10; DPFF ¶ 20). Spot 12 is also the spot closest to Village Square's entrance, and thus Village Square's tenants have typically used that spot as a pick-up and drop-off area

for residents and for overnight parking of a van used to transport a paraplegic tenant. (DPFF ¶ 13–14, 21). Aside from Spot 12 being used for that purpose, though, it was never officially designated as a loading/unloading zone and—like all of the other parking spaces in village Square's lot—was never assigned to individual tenants. (DPFF ¶ 23).

Thus, Mr. Singsime was understandably confused upon moving into Village Square, and began to park regularly in Spot 12. (PPFF ¶¶ 9, 10). Shortly thereafter, Dee Luebke, Assistant Property Manager at Village Square, requested that Mr. Singsime stop parking in Spot 12. (DPFF ¶¶ 5, 24; PPFF ¶¶ 11,12). The parties disagree over the reason Ms. Luebke gave for making that request: Mr. Singsime alleges that Ms. Luebke stated that it was the defendants' policy to keep Spot 12 open for loading and unloading; the defendants, on the other hand, allege that Ms. Luebke made clear that the policy was an informal agreement amongst the tenants themselves. (PPFF ¶ 12; Def.'s Resp. PPFF ¶ 12).

The parties also disagree over what happened after Ms. Luebke made this request. Mr. Singsime alleges that Ms. Luebke demanded that Mr. Singsime move his vehicle immediately, and told him to "park it across the way on the other end." (PPFF ¶¶ 13, 16). According to Mr. Singsime, he understood that request to mean that he must park his car in Spot 1—the spot furthest from Village Square's entrance. (PPFF ¶ 17). The defendants, on the other hand, allege that this exchange never occurred, and that Ms. Luebke did not demand that Mr. Singsime move his car immediately or that he park in the spot furthest from the entrance. (Def.'s Resp. PPFF ¶¶ 13–17).

Mr. Singsime alleges that, following his first exchange with Ms. Luebke in which he was asked to refrain from parking in Spot 12, he met with her on several occasions to ask for a closer spot. (PPFF ¶¶ 18–19, 23–25).

Again, the defendants dispute this fact, alleging that Mr. Singsime never had these additional discussions with Ms. Luebke. (Def.'s Resp. PPFF ¶¶ 18–21, 23–26).

Despite the parties' myriad disagreements over what Ms. Luebke and Mr. Singsime discussed, one fact is clear: Mr. Singsime never specifically requested that Spot 12 be reserved for him, but instead merely requested that he be allowed to park in a "spot closer to the building than [Spot 1]." (*See, e.g.*, Pl.'s Resp. DPFF ¶¶ 27–29 (citing Singsime Dep. Vol. 1, at 89); *see also* DPFF ¶¶ 27–29, PPFF ¶¶ 18, 19, 24, Singsime Dep. Vol. 1, at 79). At some point after Mr. Singsime's discussion(s) with Ms. Luebke, Mr. Singsime contacted Robert McCormick, the Director of Property Management at Cardinal, to discuss the parking situation and seek an assigned spot close to the building. (PPFF ¶ 26; Def.'s Resp. PPFF ¶ 26).

Mr. Singsime did not receive an assigned parking space, and thus filed a complaint with HUD. (PPFF ¶ 27). This litigation followed, filed originally by the United States as plaintiff. (Docket #1). After the United States reached a settlement with the defendants and, accordingly, dismissed its claims against them, only Mr. Singsime remained as an intervenor-plaintiff. (Docket #23, #35). The defendants have now moved for summary judgment against Mr. Singsime, which the Court will grant. (Docket #38).

2.    Standard for Summary Judgment

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Thomas v. H&R Block Eastern Enters.*, 630 F.3d 659, 663 (7th Cir. 2011); Fed. R. Civ. P. 56(a).

A "genuine issue of material fact" exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be "genuine," the issue must create more than "some metaphysical doubt as to the material facts." *Matushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Further, it is only when the facts are "material" and "might affect the outcome of the suit under the governing law," that summary judgment is inappropriate. *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, the Court must construe all facts and draw all reasonable inferences in favor of the nonmoving party. *Thomas*, 630 F.3d at 663; *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008). The nonmoving party cannot simply rely on mere allegations or denials of the pleadings, though. *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must present genuine, admissible evidence to show that a factual issue exists that would preclude summary judgment on an issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

3. Discussion

Mr. Singsime claims that, by failing to provide him with a parking space closer to the building than Spot 1, the defendants unlawfully discriminated against him. (*See* Int. Compl. ¶¶ 9–10). Under the FHA, "a refusal to make reasonable accommodations…to afford [a handicapped] person equal opportunity to use a dwelling" constitutes unlawful discrimination. 42 U.S.C. § 3604(f)(3)(B). To succeed on such an accommodation claim, Mr. Singsime must demonstrate that he is handicapped within the meaning of the Fair Housing Act, and that the defendants knew of that disability; the parties do not dispute that Mr. Singsime has established these basic facts. The required showing does not stop there, though, and Mr. Singsime must establish the further facts that he requested an accommodation:

1. that would be necessary to afford him the equal opportunity to use a dwelling;[1]

2. that was reasonable; *and*

3. that the defendant refused to make.

*See Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) (en banc), 42 U.S.C. § 3604(f)(3)(B) (stating that "a *refusal* to make reasonable accommodations" constitutes a violation (emphasis added))*; see also Astralis Condo. Ass'n v. Sec'y, U.S. Dept. of Hous. and Urban Dev.*, 620 F.3d 62, 67 (1st Cir. 2010), *DuBois v. Ass'n of Apartment Owners*, 453 F.3d 1175, 1179 (9th Cir. 2006), *cert. denied,* 549 U.S. 1216 (2007). If Mr. Singsime has failed to demonstrate facts sufficient to show each of those three elements, his claim fails and the Court would be obliged to grant summary judgment. *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (placing the burden on the plaintiff to establish a prima facie case that a requested accommodations satisfied these elements) (citing *Vande Zande v. Wisconsin Dept. of Admin.*, 44 F.3d 538, 543 (7th cir. 1995), *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 403 (2002)).

3.1 Mr. Singsime's Request

Before it can analyze whether Mr. Singsime has demonstrated facts sufficient to satisfy the three elements of an accommodation claim, the Court

---

[1] The Seventh Circuit has identified an additional factor: "equal opportunity." *See Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784. It has defined this factor to mean "the opportunity to choose to live in a residential neighborhood." *Id.* (citations omitted). Given the similarity between the "equal opportunity" factor and the causation aspect of the "necessity" factor, though, the Court treats "equal opportunity" as subsumed by its "necessary" inquiry in this case. *See Wisconsin Cmty. Servs.*, 465 F.3d at 749 (stating that there is a "link" between the "term 'necessary' and the goal of 'equal opportunity.'").

must first firmly define the precise contours of Mr. Singsime's request. Mr. Singsime seems to argue that his request was that he not be prohibited "from using the lone designated handicapped spot." (Pl.'s Resp. 3).

The Court disagrees with that assertion for several reasons. To begin, even taking all of Mr. Singsime's alleged facts as true, it is clear that he was never told that he could not *use* Spot 12, but only that he could not use Spot 12 as his personal parking space. (*See* PPFF ¶ 12). In other words, Mr. Singsime was still allowed—and was aware that he was allowed—to use Spot 12 in a manner identical to the way it was employed by the majority of other tenants: as a pick-up and drop-off point. (PPFF ¶ 12). Mr. Singsime *was* prohibited from using Spot 12 as his personal parking space (as were the other tenants), but the parties' proposed facts demonstrate that he never specifically requested an accommodation that he be allowed to use Spot 12 in such an exclusive way. (*See, e.g.*, Pl.'s Resp. DPFF ¶¶ 27–29 (citing Singsime Dep. Vol. 1, at 89); *see also* DPFF ¶¶ 27–29, PPFF ¶¶ 18, 19, 24, Singsime Dep. Vol. 1, at 79).

In fact, the Court believes that Mr. Singsime's actual requested accommodation was that he simply be allowed to park in a parking space closer to Village Square's entrance. As discussed above, despite the many disputed facts in this case, the parties seem to agree that the only specific request made by Mr. Singsime was for the simple accommodation that he be allowed to park closer to the building than Spot 1. (*See, e.g.*, Pl.'s Resp. DPFF ¶¶ 27–29 (citing Singsime Dep. Vol. 1, 89); *see also* DPFF ¶¶ 27–29, PPFF ¶¶ 18, 19, 24, Singsime Dep. Vol. 1, at 79). From Mr. Singsime's deposition testimony and the undisputed facts presented to the Court, it is clear that Mr. Singsime never specifically requested a personal, assigned parking spot

closer to the building than Spot 1.² (*See, e.g.*, Pl.'s Resp. DPFF ¶¶ 27–29 (citing Singsime Dep. Vol. 1, at 89); *see also* DPFF ¶¶ 27–29, PPFF ¶¶ 18, 19, 24, Singsime Dep. Vol. 1, at 79). This may be a minor distinction, but it is ultimately an important one.

Having now defined the contours of Mr. Singsime's request, the Court now turns to evaluating whether that request satisfies the elements required to succeed on an accommodation claim.

### 3.2 Elements of Accommodation Claim

Mr. Singsime's accommodation claim may succeed if he shows that his request for a personal parking spot nearer to the building than Spot 1 was: (1) necessary; (2) reasonable; and (3) denied by the defendants.

#### 3.2.1 Necessity of Requested Accommodation

For an accommodation to be necessary, it must be such that, "without the accommodation, the plaintiff will be denied an equal opportunity to obtain the housing of her choice." *Wisconsin Cmty. Servs.*, 465 F.3d at 749 (citing *Oconomowoc Residential Programs*, 300 F.3d at 784, *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155 (9th Cir. 2003), *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996)). The Seventh Circuit has adopted the view that an accommodation is only necessary if it will "ameliorate the effect of the plaintiff's disability." *Wisconsin Cmty. Servs.*, 465 F.3d at 749. Perhaps

---

²Mr. Singsime's deposition testimony includes several statements that the Court interprets to mean that he never asked for an assigned parking space. Singsime Dep. Vol. 1, at 79 (in response to the question "And you never asked [Ms. Luebke] whether there were assigned spaces for tenants?", Mr. Singsime responded "No. I didn't want to argue with her."), 89 (in response to the question "Did you ask [Ms. Luebke] for an assigned space that was closer or did she tell you?", Mr. Singsime responds "I just said closer," indicating to the Court that he did not make a specific request for an *assigned* spot that was closer).

most succinctly, this inquiry can be summarized into a single question: if the accommodation is not made, does the plaintiff suffer because of his handicap? *See Id.* (citing *Hemisphere Bldg. Co. v. Vill. of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999)).

In this case, the Court finds that Mr. Singsime's request to park nearer to the building than Spot 1 was a necessary accommodation. Without the accommodation, Mr. Singsime was forced to walk a further distance. This additional distance may have been negligible—essentially the difference between the distance (a) from Spot 1 to the entrance and (b) from any parking space besides Spot 1 and Spot 12 to the entrance—but it is a further distance, nonetheless. And, given that Mr. Singsime's disability made it difficult and painful for him to walk, that (albeit slight) additional difference made Mr. Singsime's residency at Village Square more difficult, eventually causing him to leave.

Thus, Mr. Singsime's request to be allowed to park closer to the entrance than Spot 1 was necessary. Without the accommodation, Mr. Singsime suffered pain and left his apartment, because of his handicap.

### 3.2.2 Reasonableness of Requested Accommodation

The inquiry into whether an accommodation is "reasonable" is "highly fact-specific …and requires balancing the needs of the parties." *Oconomowoc Residential Programs*, 300 F.3d at 784 (citing *Dadian v. Village of Wilmette*, 269 F.3d 831 (7th Cir. 2001)). The Court should find an accommodation reasonable if it is effective and "proportional to the costs to implement it." *Oconomowoc Residential Programs*, 300 F.3d at 784 (citing *Vande Zande*, 44 F.3d at 543). On the other hand, if a requested accommodation "imposes undue financial or administrative burdens or requires a fundamental alteration in the nature of the program, it is unreasonable." *Oconomowoc Residential*

*Programs*, 300 F.3d at 784 (citing *Erdman v. City of Fort Atkinson*, 84 F.3d 960, 962 (7th cir. 1996)).

The Court finds that, in this case, allowing Mr. Singsime to park closer to the entrance than Spot 1 is a reasonable accommodation. As a simple matter of logic, doing so would not cost the defendants any money, while it would effectively alleviate some of Mr. Singsime's difficulties in reaching the entrance. Making that accommodation would also not entail any undue administrative burden or fundamental operation. Village Square had operated in the same manner for years, allowing its tenants to park in practically any space—with the exception of Spot 12. Thus, simply permitting Mr. Singsime to take advantage of the same open-parking policy would seemingly entitle him to park closer to the entrance than Spot 1 on any occasion that any parking space other than Spot 1 or Spot 12 was available.

As such, allowing Mr. Singsime to park closer to the entrance than Spot 1—which, essentially, would simply mean permitting Mr. Singsime to take advantage of the pre-established arrangement allowing tenants to park in any non-Spot 12 space—would be a reasonable accommodation.

### 3.2.3 Defendants' Refusal to Make Accommodation

Though Mr. Singsime has established the other parts of his claim, he fails on this final element.

If the defendants did not, in fact, refuse to make Mr. Singsime's requested accommodation, then they cannot be held to have unlawfully violated the Fair Housing Act. 42 U.S.C. § 3604(f)(3)(B) (stating that a plaintiff must show that a defendant's actions constituted a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling.") Thus, if the defendants

carried out Mr. Singsime's requested accommodation, or simply did not take any action that would result in the accommodation not being carried out, then they could not have unlawfully refused to accommodate Mr. Singsime's request. *Id.*

The facts, themselves, simply show that the defendants did not refuse to accommodate Mr. Singsime's request to park closer to the entrance than Spot 1. In fact, the first-come, first-served parking policy that had been in place for years would have allowed Mr. Singsime to park closer to the building on many occasions. Mr. Singsime has admitted that parking spaces other than Spot 1 were often available, and that he was told that parking spaces were available on a first-come basis. (DPFF ¶¶ 26 (fact that Mr. Singsime was told of the first-come arrangement not disputed)[3], 32 (not disputed)). Further, any reasonably perceptive individual would realize that every other car in the parking lot changed spaces with some regularity. If Mr. Singsime truly believed that he was the only tenant with an assigned space, and that he had been assigned the space furthest from the door, that purely subjective belief was entirely unreasonable.

As a simple matter of logic, the defendants cannot be held responsible for refusing to accommodate a request to park closer to the entrance than Spot 1, when they likely did not even understand that request to exist. Not

---

[3]While, elsewhere in his responses to the defendants' proposed findings of fact, Mr. Singsime states that he "was never told parking was on a first come first serve [sic] basis nor was he told there were no assigned spaces," that statement applies only to his communications with Ms. Luebke. (Pl.'s Resp. DPFF ¶ 23 (citing Singsime Dep. Vol. 1, at 70–71 (in response to the question "Do you recall [Ms. Luebke] telling you that the spaces were first come/first served?" Mr. Singsime answered "No"; there is no other discussion on those pages that would conflict with the defendants' assertion that Mr. McCormick told Mr. Singsime of the first-come policy))).

only was Mr. Singsime's understanding of the parking situation unreasonable, but also, as discussed at several points above, Mr. Singsime never specifically requested that he be given an assigned parking space closer to the entrance. (*See, e.g.*, Pl.'s Resp. DPFF ¶¶ 27–29 (citing Singsime Dep. Vol. 1, at 89); *see also* DPFF ¶¶ 27–29, PPFF ¶¶ 18, 19, 24, Singsime Dep. Vol. 1, at 79). Thus, the defendants were never put on notice that Mr. Singsime had a false impression of the parking requirements. Without knowing that Mr. Singsime believed that he was required to park in Spot 1, the defendants were reasonable to assume that Mr. Singsime was simply upset with being unable to park in Spot 12. Thus, the only refusal that the defendants were possibly responsible for was refusing to let Mr. Singsime park in Spot 12 or perhaps receive an assigned space; but, given that he never specifically made those requests, the defendants could not have refused them.

       The defendants never, in fact, refused to allow Mr. Singsime to park closer to the entrance than Spot 1. Mr. Singsime imposed that limitation upon himself by refusing to listen to the clear statements of the defendants (DPFF ¶ 26), taking mere words at greater than face value (PPFF ¶¶ 14–17), ignoring the evidence outside his window of an otherwise harmoniously-functioning parking system (DPFF ¶ 32), and declining to specifically discuss his concerns with the parking situation (*see, e.g.*, Pl.'s Resp. DPFF ¶¶ 27–29 (citing Singsime Dep. Vol. 1, at 89); *see also* DPFF ¶¶ 27–29, PPFF ¶¶ 18, 19, 24, Singsime Dep. Vol. 1, at 79). As such, the Court will not find that the defendants unlawfully refused Mr. Singsime's requested accommodation that he be allowed to park closer to the entrance than Spot 1.

4. Conclusion

Having found that the defendants did not unlawfully refuse Mr. Singsime's requested accommodation, the Court is obliged to grant the defendants' motion for summary judgment.

Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment (Docket #38) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that Intervenor-Plaintiff Richard Singime's Complaint be and the same is herewith DISMISSED on its merits together with such costs as may be taxed by the Clerk of the Court.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of December, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge